RENDERED: JULY 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0384-MR

RON ROCK                                                     APPELLANT


                APPEAL FROM MARSHALL FAMILY COURT
v.               HONORABLE STEPHANIE J. PERLOW, JUDGE
                ACTION NO. 10-J-00265


AMY PATTERSON                                         APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Ron Rock appeals the Marshall Family Court's order entered on February 20, 2024, denying his motion for relief from judgment pursuant to Kentucky Rules of Civil Procedure (CR) 60.02, and awarding attorney fees to Amy Patterson. For the following reasons, we affirm.

## BACKGROUND

On March 24, 2011, the Marshall Family Court entered a judgment awarding joint custody of their minor child to Rock and Patterson. The court

designated Rock as the residential parent, and granted visitation to Patterson. The court ordered Patterson to pay child support in the amount of $182.60 per month, effective April 1, 2013.

On October 14, 2020, Patterson filed a motion to modify timesharing on the basis that the child had exclusively lived with her since approximately August of 2019, and there had been a material change in circumstances since the prior custody order. She asked to be named the primary residential custodian. She also filed a notice of withholding, stating that she intended to deny Rock visitation because she thought he was in possession of and using drugs, and moved for the court to order Rock to submit to a drug screen. The result of the court-ordered drug test was that Rock tested positive for methamphetamine use in March of 2021.

On May 19, 2021, Rock filed a motion and order for rule, asking that Patterson be required to show cause why she should not be held in contempt for failure to abide by the March 24, 2011, order for custody/visitation and payment of child support. His affidavit in support stated that Patterson had paid less than the full amount of child support ordered and had only paid in some of the years he was residential custodian. He alleged an arrearage of approximately $10,538.40 as of April 1, 2020, his estimate of when the child started residing with Patterson.

On June 30, 2021, the Marshall Family Court held an evidentiary hearing on the foregoing motions. As to his financial position, Rock testified that he had taken out savings and had been trading in penny stocks, but lost $240,000 in 2019, after which he had no choice but to sell his house. He stated that since then he had been living on withdrawals from his stock market account of cumulatively $50,000 in the past year. He reported that he was unemployed but intended to start a handyman business. He testified that after taking out the approximately $50,000 over the course of the year, he had about $70,000 remaining in the account. Patterson testified that she was receiving $1,600 from an investment account,[1] and had no other income. Patterson was not questioned about her assets during the hearing.

On July 30, 2021, the court entered an Order Modifying Timesharing. The court found that both parties testified they did not follow the timesharing schedule entered by the court in its 2011 order. The court found that Patterson should not be held in contempt because she had withheld visitation from Rock out of safety concerns for their child. The court established Patterson as the primary residential parent. The court attributed income to Rock of $45,000 a year and used

---

[1] Amy Patterson called this a retirement account, and the court's orders followed suit, but since this apparently consisted of the money she inherited, we will refer to it as an investment account.

Patterson's reported income of $1,600 a month to arrive at a child support obligation for Rock of $493.50 per month under child support guidelines.

Within ten days of judgment, on August 9, 2021, Rock filed a motion to alter, amend, or vacate the court's order pursuant to CR 59.05, which stated:

> The Court failed to issue a ruling on Respondent's Motion for Rule for Petitioner's failure to pay child support. For a period of time up until August 2019, when the child went to live with the Petitioner, the Petitioner failed to pay her child support as Ordered and Respondent would request a ruling calling for an offset of those unpaid funds against his child support obligation.

Record at 165.

Patterson's reply asserted that Rock had testified at the most recent hearing that "(a) the parties had operated under an agreement in which money was deposited into a college savings account for the minor child; and (b) that he did not wish to recoup any back child support from Petitioner." Record at 178.

Neither of these statements were accurate as to what Rock expressed at the hearing. While Rock testified that the parties agreed in 2016 to at least put $100 each monthly into an account for the child's college, he stated: "That's what we actually talked about, the only time, like it *wasn't in lieu of anything else*, it was let's just do something." June 30, 2021, video record at 2:15. Furthermore, Patterson did not testify that paying into the college fund was intended to be a new support agreement between the parties. The testimony of both contradicts the

-4-

claim that their establishing a shared college fund was intended to supplant Patterson's child support obligation.

Additionally, Rock did not waive his entitlement to the child support arrearage at the hearing. Rock testified that the parties had never agreed to relieve Patterson from her child support obligation when the parties were sharing a residence from 2014 to 2016. And, at the time of the hearing, Rock had a pending motion for contempt for Patterson's failure to pay the 2011 child support obligation, which was never withdrawn.

When the motion to alter, amend, or vacate came on for a hearing on September 1, 2021, the court instructed that a ruling would be rendered after reviewing the video, and asked counsel to provide citations to the hearing where testimony was given regarding Patterson's lack of payment of child support, which Rock's counsel complied with on October 14, 2021. The court eventually entered an order on December 7, 2021, ruling:

> 1.      Upon review of the court file and copy of the hearing, regarding the failure of the court to address the motion for rule of the Respondent, the Court, in its Order of July 30, 2021, page 3, numerical paragraph 1 under **Judgment** states as follows: Ron's Motion for Rule and request for attorney's fees are hereby DENIED." The Court declines to alter, amend or vacate that portion of its order and their motion is DENIED.

> 2.     The court declines to offset the child support as requested in the Respondent's Motion to Alter, Amend, or Vacate.  The motion is DENIED.

Record at 197.

As Rock correctly notes in his brief on appeal, while the court had ruled on the Motion for Rule, it was only as to Patterson's withholding visitation, and left unaddressed her child support arrearage.  The court simply declined to offset any support owed by Patterson against that owed by Rock.  However, neither the court's Order Modifying Timesharing of July 30, 2021, nor the Order Regarding Motion to Alter, Amend or Vacate entered December 7, 2021, were appealed.

On February 17, 2022, Rock had obtained new counsel, who filed a Verified Motion for Judgment on Past Due Child Support.  The motion recounted that Patterson's obligation to pay child support under the March 24, 2011, order was not altered until the court's July 30, 2021, order, and the court had not allowed Rock a credit or offset for the past due child support owed by Patterson.  The motion alleged that Rock was entitled to a judgment for the unpaid child support of approximately $18,077.  Record at 201.

Also on that date, Rock filed a Motion to Modify Child Support stating that the court imputed income to him derived from the single-year withdrawal from his stock accounts, and asked the court to consider his current

-6-

income which represented a decrease in excess of 15 percent of his child support obligation. His affidavit in support, with information about his past and current actual income, asserted his entire income since July of 2021 equated "to $1,875 month averaged over that time." Record at 204.

Patterson again responded that Rock had testified that the parties had agreed that Patterson would put money into an account for the minor child in lieu of child support. Patterson noted that Rock had "sought to have Patterson held in contempt of court for the very same issue he now brings in the form of a request for judgment," and noted the Court's previous denials of Rock's requests. Record at 216.

By order entered on April 29, 2022, the family court denied both motions. Therein, the court stated in part as to the child support issues:

1.     <u>Motion for Judgment on Past Due Child Support</u>

It is ordered that the motion for judgment of past due child support be DENIED. The issue of past due child support has been addressed by previous orders of this court.

2.     <u>Motion to Modify Child Support</u>

Inasmuch as the parties are going through counseling with their child with regard to child support and timesharing, it is not ordered that, at this point, Ron's motion to modify child support be addressed. It is ordered that the motion be held in abeyance until further counseling and visitation has been accomplished between the minor child and Ron.

Record at 247. Again, the April 29, 2022, order was not appealed.

On November 1, 2022, Rock, *pro se*, filed a motion to modify child support. He argued that the court's order denying his back child support was unjust. To contradict Patterson's claim that they had a different agreement to pay only $100, he attached a copy of a letter showing his attorney had asked Patterson to begin paying child support in November 2016. Rock stated that Patterson could afford to pay the arrearage since she had inherited $365,000, and received $1,600 monthly from that inheritance.

Patterson responded with a motion to strike on grounds that Rock did not state a basis to modify, and did not state whether he had completed the counseling which the court ordered in its April 29, 2022, order placing the child support issue in abeyance. In addition, Patterson argued that Rock was seeking to vacate a prior order and the time for that had long since passed. On November 29, 2022, the court granted the motion to strike on the basis that Rock had not completed counseling, and set the matter for a hearing in January. In addition, the court agreed that Rock was attempting to vacate a prior order and the time for such a motion had expired.

In January of 2023, Rock had again obtained new counsel who filed a motion on January 25, 2023, to modify child support on the basis that the court's child support order of July 30, 2021, was based on 2020 income and Rock

presently had significantly reduced income. On that same day, Patterson filed a motion to hold Rock in contempt for failure to pay child support and alleged that he had an arrearage of approximately $5,435.

The court held an evidentiary hearing on the motions on June 13, 2023. Rock testified that he had only made about $17,000 from his handyman business in 2022. Since December of 2022, he had worked at a plumbing company and a construction company, and most recently made around $16 an hour on a 40-hour week. Patterson testified that she had only earned about $600 in the previous year from independent house-cleaning jobs. She further testified that she received money from her adult son and from friends, and was looking for steady housekeeping work. Patterson also testified that her investment account had been depleted in September of 2022. In an order entered June 20, 2023, the court held that Rock failed to meet the 15 percent deviation requirement in Kentucky Revised Statutes (KRS) 403.213(2) to qualify for a child support reduction, and thus denied his motion to modify child support. The court further ruled that Rock had the ability to pay his child support obligation and was held in contempt for failure to comply with previous orders. Record at 473-475. This order was also not appealed.

On July 18, 2023, counsel for Rock filed a motion to withdraw as counsel and a Motion for Out of Time Appeal. In the Motion for Out of Time

Appeal, Rock requested to file a late appeal of orders denying his motions for alleged child support arrearages owed by Patterson. Rock claimed he was not advised he could appeal and was "in flux between attorneys for some time thereafter." Record at 496-497. The court granted counsel's motion to withdraw on July 20, 2023, and on August 10, 2023, entered an order denying Rock's motion to file a late appeal.

On August 17, 2023, Rock, *pro se*, filed another motion for recalculation of his child support, in which he argued that Patterson had "not been forthcoming with her fiscal reporting or net worth." Record at 560. Rock wanted to introduce new evidence of Patterson's actual income since 2019 based on her withdrawals from the investment account. He submitted his summary of the withdrawals in the motion to show that Patterson was withdrawing more than the $1,600 a month that she had previously testified to. He also reported his current wages. Rock filed another *pro se* motion on September 5, 2023, styled as a motion to withdraw the motion for recalculation, in which he stated he had filed a judicial complaint. The court treated this as a request for recusal, which the court denied by order entered on September 11, 2023. Patterson then filed a motion on September 27, 2023, for sanctions against Rock for his failure to pay child support, and for attorney fees.

On October 23, 2023, Rock, *pro se*, filed yet another motion which is the genesis of the present appeal. He moved to introduce evidence regarding Patterson's income account statements, received through a subpoena of Patterson's investment account. Rock argued that the statements showed Patterson had not been truthful about her income at the hearing in 2023. He asked the court to review her income statements and reconsider the court's ruling regarding the $18,000 child support arrearage he alleged Patterson owed him. Record at 586.

By order entered November 15, 2023, the family court struck the financial records filed by Rock and concluded that Rock was asking for CR 60.02 relief from the prior orders. The court required the parties to brief the motion. Rock then retained another attorney who entered an appearance for the purpose of briefing the CR 60.02 motion.[2] Rock argued that Patterson's inheritance had not been disclosed to the court. The brief asserted that the account statements, attached to the brief, showed that Patterson "mislead the Court about her actual income and assets during the child support calculation which negatively affected Mr. Rock." Record at 871. He argued that Rock had no means to refute Patterson's testimony as to her income until he obtained the account statements pursuant to a recent response from earlier subpoenas. He also argued that although

---

[2] Ron Rock's new attorney filed an entry of appearance and a new motion for Kentucky Rules of Civil Procedure 60.02 relief on January 1, 2024.

the information existed, three previous attorneys hired by Rock were unable to compel the information in earlier discovery attempts. Counsel sought to reopen the matter under CR 60.02(b) "newly discovered evidence" or (d) "fraud affecting the proceedings, other than perjury or falsified evidence." He asked for an order vacating Rock's previous child support order, and restoring the arrearages owed to him by Patterson.

Counsel for Patterson responded that the existence of the investment account was known to the court, Rock had made reference to it in his *pro se* motion to modify filed in November of 2022, and the CR 60.02 motion for relief from judgment was not timely or properly invoked. In the court's order entered February 20, 2024, the family court agreed with Patterson that Rock's evidence was not newly discovered and the motion was otherwise time-barred under CR 60.02(b). The family court also held there was not sufficient evidence of fraud by Patterson to set aside its previous orders under CR 60.02(d). The court additionally ordered Rock to pay $1,000 in attorney fees to Patterson for having to defend his frivolous motion. This appeal followed.

## ANALYSIS

The family court's denial of a CR 60.02 motion will not be overturned absent an abuse of discretion. *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011). The test for abuse of discretion is whether the judge's decision was "arbitrary,

unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

CR 60.02 allows a court to relieve a party from a final judgment or order upon the following grounds:

> (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief.

The Rule further provides: "The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken."

CR 60.02 is not intended as an "additional opportunity to relitigate the same issues which could reasonably have been presented by direct appeal." *Kentucky Ret. Sys. v. Foster*, 338 S.W.3d 788, 796 (Ky. App. 2010). "[T]he rule was intended to codify the common-law writ of *coram nobis*," the purpose of which was to bring before the court "judgment errors in matters of fact which (1) had not been put into issue or passed on, (and) (2) were unknown and could not

-13-

have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court." *Id.*

## CR 60.02(b)

Based on our review, the family court correctly determined that Rock's reliance on CR 60.02(b), citing newly discovered evidence, fails because it was not brought within a year of the judgment ordering Rock to pay child support, which was entered July 30, 2021. Additionally, the family court also correctly held that Rock's evidence regarding Patterson's inheritance was not new evidence as contemplated in the rule. "Newly discovered evidence is evidence that could not have been obtained at the time of trial through the exercise of reasonable diligence." *Commonwealth v. Harris*, 250 S.W.3d 637, 642 (Ky. 2008). Patterson testified at the hearing in 2021 that she was living on income from an investment account, and Rock also testified that he knew she lived on an inheritance. The underlying details of the account could have been discovered earlier through cross-examination at the previous hearings or through diligent discovery. Thus, relief was not available under CR 60.02(b).

## CR 60.02(d)

CR 60.02(d) relief pertains to "fraud affecting the proceedings, other than perjury or falsified evidence." Rock argues that Patterson lied in 2021 about her income since she was withdrawing more from the investment account than the

amount she testified to. To constitute fraud affecting the proceedings, the movant must demonstrate fraud upon the court which attempted "to subvert the integrity of the court itself." *Edwards v. Headcount Mgmt.*, 421 S.W.3d 403, 406 (Ky. 2014) (quoting *Goldsmith v. Fifth Third Bank*, 297 S.W.3d 898, 904 (Ky. App. 2009)). The fraud covered by CR 60.02(d) is generally "fraudulent conduct outside of the trial which is practiced upon the court, or upon the defeated party, in such a manner that he is prevented from appearing or presenting fully and fairly his side of the case." *McMurry v. McMurry*, 957 S.W.2d 731, 733 (Ky. App. 1997) (quoting W. Bertelsman and K. Phillipps, *Kentucky Practice* CR 60.02, cmt. 6 (4th ed. 1984)). We agree with the family court that Rock failed to establish that Patterson committed fraud sufficient to set aside the family court's orders entered in this case.

<u>CR 60.02(e) and (f)</u>

For the first time on appeal, Rock argues that he is also entitled to relief under CR 60.02(e) and (f), based upon extraordinary circumstances. These arguments were not presented to the court below for consideration. This Court has no authority to review issues not raised or decided by the court below. *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989). And, CR 60.02 relief is not available where the purported errors could have been properly raised before this Court on direct appeal, which Rock failed to do. *Goldsmith*, 297 S.W.3d at 903.

Accordingly, this Court will not address these arguments on appeal, including any relief under CR 61.02, given the family court committed no palpable error in denying the CR 60.02 motion.

ATTORNEY FEES

Finally, Rock argues that based on the totality of circumstances regarding his CR 60.02 motion, the trial court's imposition of attorney fees upon a finding that his motion was frivolous was an abuse of the court's discretion. We disagree. An award of attorney fees is permitted in domestic relations cases. KRS 403.220. Rock filed the motion and pleadings at issue without any substantive legal basis, that were stricken by the family court. On its face, the motion was not well grounded in fact or warranted by existing law, especially CR 60.02. *See* CR 11. We agree with the family court that the pleadings were frivolous. Under Kentucky law, the amount of an award of attorney fees is subject to the discretion of the court. *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). Based on our review of the record and given that Rock failed to avail himself of a timely appeal of previous final orders, we find no abuse of discretion in awarding attorney fees in this case.

CONCLUSION

As duly noted in this Opinion, Rock had several opportunities to properly appeal final orders that arguably may have addressed the alleged child

support deficiency owed by Patterson and failed to do so. Whether this was at Rock's direction or a result of prior attorneys' malpractice is not an issue before this Court nor will we speculate regarding same. Rock was not entitled to relief below under CR 60.02 and we affirm the family court's ruling thereon.

However, based on our thorough review of the record below, the family court has not made a determination on whether there exists an alleged child support deficiency owed by Patterson to Rock. As noted, the family court declined to offset any alleged child support owed by Patterson against the child support owed by Rock that was established by the evidence. Similarly, nothing in the record indicates that Rock waived the alleged obligation for child support owed by Patterson or that the family court had "relieved" Patterson of any child support obligations as alleged by Rock in his brief to this Court. Accordingly, nothing in this Opinion should be construed that this Court has addressed the merits of any claims regarding alleged child support owed by Patterson. Nor does this Opinion preclude a proper adjudication of this issue.

In Kentucky, a family court has no authority to forgive a child support arrearage. *Lichtenstein v. Barbanel*, 322 S.W.3d 27, 33 (Ky. 2010). In *Sallee v. Sallee*, 468 S.W.3d 356 (Ky. App. 2015), this Court addressed child support arrearages as follows:

> It is well-established that "each installment of child support becomes a lump sum judgment, unchangeable by

the trial court when it becomes due and is unpaid."
*Raymer v. Raymer*, 752 S.W.2d 313, 314 (Ky. App.
1988) (quoting *Stewart v. Raikes*, 627 S.W.2d 586, 589
(Ky. 1982)).  In *Raymer*, this Court held that satisfaction
and payment of child support are both affirmative
defenses under Kentucky Rules of Civil Procedure (CR)
8.03, and pointed out that "[t]he party holding the
affirmative of an issue must produce the evidence to
prove it."  *Raymer*, 752 S.W.2d at 314 (quoting CR
43.01).

*Id.* at 357-58.

Patterson alludes to a possible agreement by the parties to relieve

Patterson of any alleged child support deficiency.  Parties can agree to modify

custody and child support orders which a family court can recognize and reduce an

arrearage.  *Price v. Price*, 912 S.W.2d 44, 46 (Ky. 1995).  However, the Supreme

Court has stated explicit requirements for such a modification:

A court will enforce a private agreement between
parents if it meets certain requirements.  If the agreement
is oral it must be proven with reasonable certainty and
the court must find "that the agreement is fair and
equitable under the circumstances."  *Whicker v.
Whicker*, Ky. App., 711 S.W.2d 857, 859 (1986).
Moreover, the agreement, once proven, will only be
enforced if the "modification might reasonably have been
granted, had a proper motion to modify been brought."

*Id.* at 46.  The record does not reflect that Patterson has moved to modify any prior

court orders regarding her child support obligation.

If and when the family court renders a final order addressing any

alleged child support arrearage owed by Patterson, including any agreements

-18-

reducing said arrearage, that order may be properly appealed to this Court by either party. In this appeal, Rock has failed to properly present the arrearage issue to this Court for review.

For the foregoing reasons, the judgment of the Marshall Family Court is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Chris Hendricks | Alisha Kay Bobo |
| Murray, Kentucky | Paducah, Kentucky |